No. 55793.—J. E. Bernard & Company, Inc. v. United States, protest 160722–K/ 2895 (Chicago).

OLIVER, Chief Judge: The merchandise in this case consists of certain celluloid reindeer of various sizes which was assessed for duty under paragraph 1513 of the Tariff Act of 1930 at 1 cent each plus 50 per centum ad valorem as celluloid toys. The plaintiff claims that the merchandise is properly dutiable under paragraph 31 (b) (2) of the same act at the rate of 60 per centum ad valorem. The merchandise herein was invoiced as celluloid "toys." The pertinent parts of the involved paragraphs are as follows:

PAR. 1513. * * * dolls and toys, composed wholly or in chief value of any product provided for in paragraph 31 * * *; not having any movable member or part, 1 cent each and 50 per centum ad valorem; * * *.

Paragraph 31 provides for cellulose acetate, and compounds, combinations, or mixture containing cellulose acetate, and also provides for compounds of cellulose.

PAR. 31. (b) (2). All compounds of cellulose (except cellulose acetate, but including pyroxylin and other cellulose esters and ethers), and all compounds, combinations, or mixtures of which any such compound is the component material of chief value:

*        *        *        *        *        *        *

(2) made into finished or partly finished articles of which any of the foregoing is the component material of chief value, not specially provided for, 60 per centum ad valorem.

It was conceded by counsel for the respective parties that the articles in question consist of compounds of cellulose, to wit, pyroxylin, and "that they are not made in chief value from transparent sheets, bands or strips not more than .003 inch in thickness nor made from smokeless powder nor made from sponges." (R. 2.)

The plaintiff introduced the testimony of one witness, the partner of the consignee of the merchandise. He stated that he was familiar with the involved merchandise and had personal knowledge as to whom the articles were sold and as to what was done with such merchandise ultimately by the consumer. He identified a 5-inch size reindeer as being the same in all respects as those on the involved invoices, except as to size (plaintiff's exhibit 1; R. 4). This particular exhibit has the right horn broken off as a result of handling but, as imported, had two horns. The testimony of the plaintiff's witness, which was not rebutted by any evidence on the part of the defendant, was to the effect that these celluloid reindeer are sold to manufacturers of display goods, for shops, stores, and department stores with inside and outside show windows, and to manufacturers of holiday decorations and florists for decorative purposes. He had personally seen articles such as exhibit 1 used. These reindeer are sometimes used singly or in combination with a sled and a figure of Santa Claus and are placed in show windows on Christmas trees or hung from the ceiling. The witness had also seen these articles used as table decorations in the home, combined with a sled and a figure of Santa Claus, and also used in a flower bouquet in combination with other decorative articles. He had never seen these

reindeer used as playthings by children (R. 6) and stated that, in his opinion, they are too fragile to be so used.

On cross-examination, the witness stated that he had seen articles similar to exhibit 1 every year at Christmas time being used mostly by wholesale florists and in stores for decorative purposes; that he had also seen them so used approximately one hundred times from 1927 to 1939 in homes in Los Angeles where he had lived, which was the only place he had ever seen them used; that he was abroad from 1939 to 1947 but had seen these articles used about 10 or 15 times since 1947 also in Los Angeles during the Christmas period as decorations on tables or placed on or under trees.

The uncontradicted testimony of a single witness is sufficient to throw the burden on the Government of showing that the chief use of this merchandise was not as stated by the witness, but to amuse children. *Nadel & Schimmel* v. *United States*, 61 Treas. Dec. 927, T. D. 45629. In the case at bar, plaintiff's witness stated a use for this merchandise other than for the amusement of children. The testimony shows that the chief use of the merchandise is for a decorative effect. This proof has not been rebutted nor contradicted by the defendant in any way and indicates *prima facie* that it is chiefly used for the purpose stated by the witness. In addition, an examination of the sample indicates that it is suitable for such use. We therefore hold that the plaintiff has made out a *prima facie* uncontradicted case showing that these celluloid reindeer are not toys. The invoice description of these articles has some evidentiary value. (*United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325.) The use of the word "toys" on the invoice, however, is not sufficient to rebut the uncontradicted testimony of the plaintiff's experienced witness that they are not toys.

Counsel for the defendant has conceded that these reindeer consist of compounds of cellulose, namely, pyroxylin. On the basis of the record herein, we therefore hold these celluloid reindeer properly dutiable as claimed under paragraph 31 (b) (2) of the Tariff Act of 1930 as compounds of cellulose, made into finished articles, at the rate of 60 per centum ad valorem.

The protest is sustained. Judgment will be rendered accordingly.

### CONCURRING OPINION

COLE, Judge: This case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.